Argued April 18, reversed and remanded with instructions
May 13, reconsideration denied June 25, petition for
review denied July 30, 1974

STATE OF OREGON, *Appellant, v.* TOM
CANNON (No. 83482), *Respondent.*

STATE OF OREGON, *Appellant, v.* MICHAEL
RICHARD CLARK (No. 83484), *Respondent.*

STATE OF OREGON, *Appellant, v.* NETTIE
ISABELLE CLARK (No. 83485), *Respondent.*

STATE OF OREGON, *Appellant, v.* ROBERT
WALTER GREEN (No. 83486), *Respondent.*

STATE OF OREGON, *Appellant, v.* NORMAN
EDWARD DONNELLY (No. 83489), *Respondent.*

521 P2d 1326

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Ronald D. Thom,* Oregon City, argued the cause for respondents. With him on the brief was Jon S. Henricksen, Oregon City.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

The defendants were indicted for promoting gambling in the second degree.[1] Prior to the trial they demurred to the indictments on the ground the indictments failed to state facts sufficient to state a crime.[2] The court did not rule on the demurrers at that time. A jury trial was held, and verdicts of guilty were returned. At a later hearing, following further arguments on the demurrers, the court entered judgments in which it sustained the demurrers, set aside the convictions, dismissed the indictments and denied leave to resubmit the cases to the grand jury. The state appeals.

■ Defendants made a timely motion to dismiss the appeals in these cases on the ground that the state has no authority to appeal. The state may appeal in a criminal case only if authorized to do so by ORS 138.060 (1971):

"The state may take an appeal to the Court of Appeals from:

"(1) An order made prior to trial dismissing the indictment;

"(2) An order sustaining a plea of former conviction or acquittal;

"(3) An order arresting the judgment; or

---

[1] ORS 167.122:

"(1) A person commits the crime of promoting gambling in the second degree if he knowingly promotes or profits from unlawful gambling.

"(2) Promoting gambling in the second degree is a Class A misdemeanor."

[2] ORS 135.630 (1971):

"The defendant may demur to the indictment when it appears upon the face thereof that:

"* * * * *

"(4) The facts stated do not constitute a crime * * *.

"* * * * *."

"(4) An order made prior to trial suppressing evidence."

Subsections (2) and (4) are inapplicable here. Prior to a 1971 amendment,[9] subsection (1) read:

"(1) A judgment for the defendant on a demurrer to the indictment."

Defendants argue that the legislature intended by the 1971 amendment to restrict the right of the state to appeal by withdrawing the right of the state to appeal from a judgment for the defendant on a demurrer to the indictment.

The legislative history of the 1971 amendment does not support defendants' argument. Testimony given before the Senate Criminal Law and Procedure Committee by the Solicitor General of the Department of Justice indicates that the purpose of the 1971 change was to broaden rather than restrict the state's authority to appeal:

"We submitted this bill to amend the demurrer subsection to refer to any order dismissing the indictment prior to trial * * *. The problem with the demurrer clause is this: The * * * only response to the indictment other than a plea which is provided for by statute is a demurrer. There is no such thing in our statutes as a motion to dismiss. * * * [O]ur appeal statute * * * refers to a demurrer. However, the state cannot preclude the raising of constitutional issues and a motion to dismiss is the vehicle for doing that, whether the statute allows for such a motion or not. * * * [W]e find more and more that indictments are not attacked by demurrer at all. They're attacked by motion to dismiss, even when there are demurrer grounds urged, it's labeled a motion to dismiss * * * and we are precluded from appealing any

_____

[9] Oregon Laws 1971, ch 644, § 1.

ruling that's made on such an order [sic]."[4]  Minutes, Senate Criminal Law & Procedure Committee, April 14, 1971, Tape 16, Side I, at 291-298.

There is no explanation of why the 1971 amendment included the language "order made prior to trial." Given the purpose of the amendment, however, the most logical conclusion is that its drafters believed that such orders made *after* trial could be appealed by the state under ORS 138.060 (3) (1971), set out above.

■■ Although the 1971 amendment to ORS 138.060 (1), cited above, was not intended to *withdraw* the right of the state to appeal in cases such as this, it is clear that that subsection does not *authorize* the state to appeal here either. The state urges that ORS 138.060 (3) (1971) does authorize appeal. ORS 136.-810 (1971)[5] defines a motion in arrest of judgment:

> "A motion in arrest of judgment is an application on the part of the defendant that no judgment be rendered on a plea or verdict of guilty or on a verdict against the defendant on the plea of a former conviction or acquittal. It may be founded on either or both of the causes specified in subsections (1) and (4) of ORS 135.630, and not otherwise. The motion must be made within the time allowed to file a motion for a new trial, and both such motions may be made together and heard and decided at once or separately, as the court directs."

---

[4] The Solicitor General gave as an example of the problem meant to be corrected by the amendment the case of State v. Sieckmann, 251 Or 259, 445 P2d 599 (1968), in which the state's appeal was dismissed because the trial court had dismissed the indictment rather than given judgment on a demurrer to the indictment. The Supreme Court in that case pointed out that the trial court had been in error, but that the state could not appeal.

[5] Now ORS 136.500 (1973).

No "motion in arrest of judgment" was made in this case. That does not preclude, however, a determination that the trial court's order was "an order in arrest of judgment."

A motion in arrest of judgment may be based upon ORS 135.630 (4) (1971). See n 2, supra. That subsection, then, will also support an order in arrest of judgment. And that subsection was the basis for the court's ruling in this case. The order made was in response to the defendants' demurrers, but the Supreme Court has stated that:

> "* * * The motion for arrest of judgment is in part * * * in the nature of a demurrer to the indictment after conviction * * *." *State v. Fowler,* 225 Or 201, 203, 357 P2d 279 (1960).

The trial court's ruling here was, essentially, an order arresting judgment on the permissible ground of failure of the indictment to state facts constituting a crime. The fact that the ruling was in response to a demurrer made before the trial is unimportant.

■ We turn, then, to the merits of the case. All five defendants were indicted in substantially similar indictments. Defendant Green was indicted as follows:

> "The above named defendant on or about the 9th day of May, A.D., 1973, in the said County of Clackamas, State of Oregon, then and there being, and while acting other than as a player, did then and there unlawfully and knowingly promote unlawful gambling in the form of a game of bingo, *by paying off winners,* which conduct did materially aid said gambling, said act of defendant being contrary to the statutes * * *." (Emphasis supplied.)

The other indictments were identical to the above, except that in place of the emphasized portion were the following:

Defendants Donnelly and Michael Clark: "by calling numbers and paying off winners";

Defendant Nettie Clark: "by engaging in conduct directed toward the financial phases of said game, to-wit: by selling bingo cards for use in said game"; and

Defendant Cannon: "by engaging in conduct directed toward the financial phases of said game, to-wit: by paying off winners in said game."Ⓔ

The issue is whether indicting in the language of the statute—knowingly promote unlawful gambling—is sufficient.

Defendants argue that not all bingo, nor even all gambling, is unlawful in Oregon. Therefore the indictments must allege facts which bring defendants' activities within the statute. The state answers that "gambling" and "unlawful" are defined in the statutes, and that therefore merely using those words is sufficient. ORS 167.117 (1971) supplies the following definitions:

"* * * * *

"(2) 'Contest of chance' means any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein.

"(3) 'Gambling' means that a person stakes or risks something of value upon the outcome of a

---

Ⓔ A second count in defendant Cannon's indictment accused him of allowing unlawful gambling to occur on premises controlled by him and is not involved in this appeal.

contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome. 'Gambling' does not include:

"(a) Bona fide business transactions valid under the law of contracts for the purchase or sale at a future date of securities or commodities, and agreements to compensate for loss caused by the happening of chance, including but not limited to contracts of indemnity or guaranty and life, health or accident insurance.

"(b) Engaging in contests of chance under the following conditions:

"(A) The contest is played for some token other than money;

"(B) An individual contestant may not purchase more than $10 worth of tokens for use in the contest during any 24-hour period;

"(C) The tokens may be exchanged only for property other than money;

"(D) Except when the tokens are exchanged for a beverage or merchandise to be consumed on the premises, the tokens are not redeemable on the premises where the contest is conducted or within 50 miles thereof; and

"(E) Except for charitable organizations, no person who conducts the contest as owner, agent or employe profits in any manner from operation of the contest.

"* * * * * *

"(12) 'Unlawful' means not specifically authorized by law."

In *State v. Jim/White,* 13 Or App 201, 217, 508 P2d 462, Sup Ct *review denied* (1973), we said:

"The rule we distil from the Oregon cases * * * is that an indictment in the language of the statute is sufficient, but in situations where statutory language is not precise * * *"

it must be supplemented so as to leave no doubt as to the exact offense charged. And in *State v. Haas,* 13 Or App 368, 373, 510 P2d 852, *affirmed* 267 Or 489, 517 P2d 671 (1973), we stated:

> "The general rule is that an indictment in the language of the statute creating the offense is sufficient as long as it alleges all of the elements of the crime that must be proven for conviction. [Citations omitted.]"

The indictments do inform the defendants of the charges against them, that is, promoting gambling not authorized by law in the form of bingo. The state is not required to repeat statutory definitions of terms used in the indictment, nor is it required to negate all exceptions to the definition of gambling included in ORS 167.117 (3) (1971). *State v. Eyle,* 236 Or 199, 388 P2d 110, 9 ALR3d 628 (1963).

Reversed and remanded with instructions to set aside the judgments sustaining the demurrers and sentence defendants upon the convictions.